UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x
J.M. individually and on behalf of his child L.M., a minor,

                        Plaintiffs,

        -against -                                          23-cv-10002 (MMG)(JW)

NEW YORK CITY DEPARTMENT OF EDUCATION,

                        Defendant.
_____x


**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** .................................................................................. ii

**BACKGROUND AND PROCEDURAL HISTORY** ....................................................

    1. Parents Seeks Assistance in Receiving a Free Appropriate
    Public Education for L.M. .................................................................................. 1
    2. DPC1: Due Process Hearing for 2018-19 and 2019-20 school years) .......................... 6
    3. DPC2 & 3 Consolidated: Due Process Hearing for 2020-21 and 2021-22
    school years) .................................................................................................... 7

**STANDARD OF REVIEW** ...................................................................................... 10

**ARGUMENT** ........................................................................................................... 11

  **1. Plaintiffs are Prevailing Parties** ...................................................................... 11

  **2. Roller Law's requested hourly rates for attorneys
  and paralegals are reasonable** ............................................................................ 11

    a. Experience of Roller Law Attorneys and Staff ................................................ 12

    b. Client declarations demonstrating the prevailing market rates for
    special education attorneys in the New York metropolitan area ............................... 16

    c. Declarations from special education attorneys with personal knowledge
    of prevailing market rates in the New York metropolitan area ................................ 18

    d. The *Johnson* and *Arbor Hill* factors reinforce the reasonableness of Roller Law's
    requested hourly rates for these consolidated actions .......................................... 20

  **3. Roller Law's billable hours were reasonable and justified** ............................. 22

    a. Roller and the Roller Law attorneys and staff have litigated these
    matters efficiently and effectively ................................................................... 22

    b. Roller Law's total billable hours are well within the range of
    special education matters ................................................................................ 22

  **4. Total Fees Requested** ....................................................................................... 23

**CONCLUSION** ...................................................................................................... 24

## **<u>TABLE OF AUTHORITIES</u>**

**<u>Cases:</u>**

*Agudath Isr. of Am. v. Hochul*,
    2021 U.S. Dist. LEXIS 233088 (E.D.N.Y. Dec. 6, 2021) .........................................13

*Alston v. City of New York*,
    2023 U.S. Dist. LEXIS 201967 (E.D.N.Y. November 9, 2023)...............................13

*A.R. v. N.Y.C. Dep't of Educ.*,
    407 F.3d 65 (2d Cir. 2005).........................................................................................10

*Arbor Hill Concerned Citizens Neighborhood Ass'n v.*
    *Cnty. of Albany & Albany Cnty. Bd. of Elections*,
    522 F.3d 182 (2d Cir. 2008)..................................................................................passim

*Barfield v. N.Y.C. Health & Hosps Corp.*,
    537 F.3d 132 (2d Cir. 2008).......................................................................................20

*Blanchard v. Bergeron*,
    489 U.S. 87 (1989).....................................................................................................11

*C.D. v. Minisink Valley Cent. Sch. Dist.*,
    2018 U.S. Dist. LEXIS 134646 (S.D.N.Y. Aug. 9, 2018).........................................22

*Endrew F. v. Douglas Cnty. Sch. Dist. RE-1*,
    580 U.S. 386 (2017).....................................................................................................5

*Farbotko v. Clinton Cnty.*,
    433 F.3d 204, 209 (2d Cir. 2005)..............................................................................10

*Farrar v. Hobby*,
    506 U.S. 103(1992)....................................................................................................20

*Florence County Sch. Dist. Four v. Carter*,
    510 U.S. 7 (1993).........................................................................................................6

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)...................................................................................................20

*I.B. v. N.Y.C. Dep't of Educ.*,
    336 F.3d 79 (2d Cir. 2003).........................................................................................11

*J.H., et al. v. N.Y.C. Dep't of Educ.*,
    2024 U.S. Dist. LEXIS 91161, at *4.....................................................................12

*Johnson v. Georgia Highway Express*,
    488 F.2d 714 (5th Cir. 1974) ....................................................................passim

*Jose P. v. Ambach*,
    669 F.2d 865 (2d Cir. 1982)..................................................................16

*Kassim v. City of Schenectady*,
    415 F.3d 246 (2d Cir.2005)..................................................................21

*Lawrence v. Palos Verdes Peninsula Unified School District*,
    2023 U.S. Dist. LEXIS 199129 (C.D. Cal. Nov. 1, 2023).........................................21

*Lochren v. Cnty. of Suffolk*,
    344 F. App'x 706  (2d Cir. 2009)  ....................................................................11

*M.C. v. N.Y.C. Dep't of Educ.*,
    2013 U.S. Dist. LEXIS 78605 (S.D.N.Y.  June 4, 2013)....................................23

*M.F. v. N.Y.C. Dep't of Educ.*,
    582 F. Supp. 3d 49 (S.D.N.Y. 2022).........................................................16

*Millea v. Metro-North R.R. Co.*,
    658 F.3d 154 (2d Cir. 2011)..................................................................10

*Milwe v. Cavuoto*,
    653 F.2d 80 (2d Cir.1981).....................................................................21

*Rayna P. v. Campus Cmty. Sch.*,
    390 F. Supp. 3d 556 .........................................................................21

*Sch. Comm. of Burlington v. Dep't of Educ.*,
    471 U.S. 359 (1985).......................................................................passim

*Y.G. v. N.Y.C. Dep't of Educ.*,
    2022 U.S. Dist. LEXIS 65120 (S.D.N.Y. Apr. 7, 2022)...........................................passim

## Federal Statutes:

20 U.S.C. § 1400........................................................................................passim

20 U.S.C. § 1401(9) ...................................................................................5

20 U.S.C. § 1415(i)(3)(B)(i)(I) ................................................................................................10

20 U.S.C. § 1415(i)(3)(C) .......................................................................................................10

Plaintiffs, J.M. and his child, L.M., are undisputed "prevailing parties," having obtained complete success on the merits in two Due Process actions under the Individuals with Disabilities Education Act (IDEA). 20 U.S.C. § 1400, *et seq.* Plaintiffs have met all criteria for an award of reasonable attorneys' fees. For the three underlying due process actions and this federal action, Plaintiffs seek $84,751.50 in attorneys' fees and costs.[1]

## BACKGROUND AND PROCEDURAL HISTORY

**1. Parents Sought Counsel to a Free Appropriate Public Education for L.M.**

Plaintiff child, L.M., was adopted from an orphanage in Bulgaria in 2018 when she was 5 years old by Plaintiff J.M. and his wife, who lived in Queens, NY. L.M. was born prematurely and abandoned by her birth mother at the hospital. She spent her first 5 years in an orphanage for medically fragile children until her adoption by Plaintiff.

L.M. suffers from traumatic brain injury, cerebral palsy (spastic diplegia) and global development delays. She is legally blind, non-verbal and needs assistance to ambulate safely due to low muscle tone and balance issues. L.M. requires assistance for all tasks of daily living including feeding and toileting.

When Parent Plaintiff J.M. and his wife brought L.M. to New York City from the orphanage, she was severely malnourished, and she showed signs of severe abuse and trauma. L.M.'s parents obtained numerous evaluations to assess her level of functioning and to identify her needs. They registered her with the New York State Commission for the Blind and promptly notified Defendant, their local school district, that L.M. would require a special education program and placement.

---

[1] *See* Exhibits 1, 2, and 3 to the Declaration of Irina Roller, Esq., dated August 8, 2024 (Roller Decl.), filed with this motion. This figure includes fees incurred through August 7, 2024. Plaintiffs will supplement this request and include a proposed order with their reply brief.

Defendant developed an initial Individualized Education Program (IEP) dated March 20, 2019 (2018-19 school year), which recommended an extended 12-month school year, with a Special Class, along with specialized transportation and placement in a DOE specialized school. Parents had serious concerns about the Defendant's recommendations and sought counsel from the Law Offices of Irina Roller, PLLC (Roller Law) on or about April 25, 2019.

Despite their doubts and concerns that Defendant could provide an appropriate educational program, Parents decided to give the public a school program a try. They enrolled L.M. in Defendant's specialized public school as recommended by Defendant. However, what became quickly apparent to Parents was that the Defendant, an entity that employed thousands of educational experts, had placed L.M. in a school that could not meet her needs, and that the school staff did not even care to understand those needs.

Shortly after L.M.'s enrollment, personnel at the public school informed Parents that the school was not a school for the blind, that they would not provide L.M. with adaptive materials, and that Parents should adapt materials themselves. When Parents offered to show L.M.'s classroom teacher how to adapt a book for L.M., the teacher rebuffed this offer.

Meanwhile, Defendant decided that evaluating L.M. for related services such as occupational therapy, speech therapy, physical therapy, and vision therapy – all services crucial to L.M.'s ability to access educational benefits – was not a priority. They told Parents that it could take up to six months to complete evaluations. Having failed to evaluate L.M. thoroughly, Defendant could not and did not offer her the services she obviously needed to have access to any meaningful learning, such as occupational therapy, speech therapy, physical therapy, and vision therapy.

The one service that the Defendant did offer, vision therapy, was only offered one time per week to L.M., who is blind. And despite offering the vision services, they were not actually provided to L.M., meaning Defendant failed to implement its own already-inadequate program. Failing to offer

occupational therapy, speech therapy and physical therapy is unheard of for a student with L.M.'s special education needs.

Defendant public school also chose to disregard the feeding instructions mandated by L.M.'s Pediatrician. It disregarded the trauma associated around feeding for L.M. Further, Parents discovered that Defendant had L.M. remain seated in her wheelchair stroller for the entire day instead of taking her out periodically for movement, and many times L.M.'s diaper was not changed during the school day. Even more concerning, L.M. returned from the public-school with unexplained bruising on her legs.

L.M. lived about one hour from the public school and Defendant failed to provide timely bus services to and from school.

Parents made every effort to work with Defendant's public-school to correct the deficiencies of the program; however, Defendant chose to ignore Parents' efforts and took no corrective measures.

In sum, Defendant, a massive institution with thousands of educational experts, charged with the duty to provide a FAPE to L.M., fashioned a program that not only failed to offer L.M. a FAPE, but placed her in unsafe, traumatizing setting.

At their wits' ends with Defendant, and having identified an appropriate private program for L.M., on May 13, 2019, the Parents, through counsel, filed a ten-day notice (TDN) letter citing their disagreement with the District's placement and program for L.M. Parents' TDN Defendant  that, absent corrective action, they would remove L.M. from Defendant's school, enroll her at the private program at International Academy of Hope (iHope), and seek public tuition funding. Defendant took no corrective action in response to Parents' TDN.

On May 28, 2019, L.M. started at iHope, a private special education program designed for students with similar educational needs to hers. She remained at iHope through the end of that school year June 26, 2019.

On June 17, 2019, L.M.'s Parents served a second TDN, again expressing their disagreement with Defendant's program and school offered, notifying Defendant that if corrective measures were not taken, they would send L.M. to iHope for the 2019-20 school year beginning in July 2019. Once again, Defendant took no action to offer L.M. a FAPE. L.M. attended iHope for the 12-month 2019-20 school year.

Due to the mandated school shutdowns due to the COVID-19 pandemic in March 2020, L.M. finished out the 2019-20 school year in a remote program provided by iHope.

For the sake of efficiency, Plaintiffs filed one Due Process Complaint (DPC) for the 2018-19 and 2019-20 school years. *See Ex. 4, Due Process Complaint for 2018-19 and 2019-20 school years (DPC1) at 1-2.*[2]

Defendant developed a second IEP for L.M. on July 22, 2019 (for implementation on September 5, 2019), which was too late to be considered timely for the prior 2019-20 School Year which began in early July 2019, but too old and stale by the time that the 2020-21 school year was starting in July 2020. The July 22, 2019 IEP was decidedly better that the first IEP, as it placed L.M. in a class of 6 students (instead of 12 as the prior IEP), and services such occupational therapy, physical therapy, speech-language therapy and vision therapy were added to L.M.'s program, along with a one to one paraprofessional throughout the day and assistive technology in the form of a Braille Embosser.

Since IEPs are legally valid for one calendar year, Defendant's July 22, 2019 IEP for L.M. was still legally valid for the 2020-21 school year.

On June 18, 2020, L.M.'s Parents served a TDN again expressing their disagreement with the program and school offered by Defendant, notifying Defendant that if corrective measures were not

---

[2] Exhibits are to the Declaration of Irina Roller, Esq., dated August 8, 2024 (Roller Decl.), filed with this motion.

taken, they would send L.M. back to iHope for the 2020-21 school year beginning in July 2020. Defendant took no action to offer L.M. a FAPE in response to Parents' TDN. Defendant's only response was to advise Parents that it had no interest in settling their case for the 2020-21 school year.

On July 8, 2020 Parent filed their second DPC. *See Ex. 5, Due Process Complaint for the 2020-21 school year (DPC2) at 1-2*.  L.M. attended iHope for the 12-month 2019-20 school year.

The Defendant held a meeting to develop a third IEP for L.M. on August 17, 2020, but then failed to send Parents a copy of it, and also failed to make a school placement recommendation.

On June 17, 2021, L.M.'s Parents served a TDN again expressing their disagreement with the program and school offered by Defendant and notifying Defendant that if corrective measures were not taken, they would enroll L.M. at iHope again for the 2021-22 school year beginning in July 2021. Defendant took no action in response to Parents' TDN.

On July 6, 2021 Parent filed their third DPC alleging failure of Defendant to offer a FAPE to L.M. for the 2021-22 school year. *See Ex. 6, Due Process Complaint for the 2021-22 school year (DPC3)*.

 L.M. attended iHope for the 12-month 2021-22 school year.

On or about July 23, 2021 DPC 2 and DPC 3 were consolidated for trial by IHO Gronbach. An IEP must provide a student with a FAPE, as defined by the IDEA and elaborated in case law. *See* 20 U.S.C. § 1401(9); *Endrew F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 391, 399 (2017). The Defendant committed serious procedural and substantive violations of the IDEA, as recited above, then chose to ignore Parents' requests to correct them, forced Parents to file three Due Process Complaints, failed to offer settlement, and made Parents go through due process trials – all despite a slew of other options, including engaging in meaningful settlement discussions to avert litigation.

### DPC1: First Due Process Hearing (2018-19 and 2019-20 School Years)

On or about April 25, 2019 Plaintiff parent engaged Roller Law.

5

Between April 25, 2019 and July 9, 2019, Roller Law provided legal counsel to Parents, investigated their claims, filed two TDNs requesting corrective action of Defendant's inappropriate program recommendations, and drafted and filed DPC1. *See Ex. 1 at 1-2*. DPC1 was filed on July 9, 2019. *See Ex. 5 at 1*.  Roller Law filed only one DPC for the 2018-19 and 2019-20 school years.

From February 6, 2020 to August 20, 2020, the parties engaged in settlement negotiations, which ultimately broke down.  *See Ex. 1 at 3-6*.

The case was litigated under the three-pronged *Burlington-Carter* test, applicable when parents place children in private school and seek tuition reimbursement. *See Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359 (1985); *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7 (1993). A district must reimburse a parent's tuition costs when three "prongs" are met: Prong 1 - the proposed IEP does not offer FAPE; Prong 2 - the private school meets the child's needs; and Prong 3 - no equitable considerations weigh against reimbursement.

The Plaintiffs effectively and efficiently conducted the first Due Process hearing in one day, October 6, 2020 lasting about 3.9 hours.

In response to the IHO's request for Closing Statements, Plaintiffs' counsel Irina Roller stated that she was prepared to present an oral closing; however, the DOE's litigator insisted on a written closing:

> MS. ROLLER:  I can do it orally or in writing if the Department of Education also agrees to do it orally, then I'm happy to proceed that way.  However, if the Department of Education indicates that they want to proceed with a written closing, then I would ask to do the same.
>
> HEARING OFFICER FLAME:  Dr. Aleem?
>
> DR. ALEEM:  I would like to do a written closing statement.

*See Ex. 7, October 6, 2020 Hearing Transcript at 174.*

Plaintiffs submitted their Memorandum of Law and Closing Statement on November 4, 2020.

On January 28, 2021, IHO Flame issued her Findings of Fact and Decision (FOFD). *See Ex. 8, FOFD1*. She held wholly in favor of L.M. and Parent, finding that Defendant failed to offer L.M. a FAPE both procedurally and substantively for the two school years at issue. Ex. 8 at 9. She held that iHope was an appropriate school and that there was no basis to reduce Parent's tuition reimbursement. *Id*. at 11. Finally, she held that because Parent lacked the financial resources to pay for iHope, she was entitled to have the DOE pay iHope directly and retroactively. *Id*. at 9. Further, IHO Flame held that L.M. was entitled to special transportation services with an air-conditioned bus, wheelchair lift, and limited time travel not to exceed 60 minutes. *Id*. at 13.

The DOE did not appeal IHO Flame's order.

**DPC2 & 3 Consolidated: Second Due Process Hearing (2020-21 and 2021-22 school years)**

While the DPC1 action was pending, Parent needed to secure a FAPE for L.M. for the 2020-2021 school year. Parent again retained Roller Law in February 2020.

In March 2020, the COVID-19 pandemic had just begun and children like L.M. who required intensive education, were especially vulnerable when in-person learning was suspended. The United States Department of Education immediately made clear that children's rights under the IDEA were not suspended during the pandemic. *See Ex. 9, U.S. Dep't of Educ., Office for Civil Rights, Office of Spec. Educ. and Rehabilitative Servs, Supp. Fact Sheet Addressing the Risk of COVID-19 in Preschool, Elementary and Secondary Schools While Serving Children with Disabilities*.

On June 18, 2020, L.M.'s Parents served a TDN expressing their disagreement with the program and school offered by Defendant and notifying the Defendant that if corrective measures were not taken, they would send L.M. back to iHope for the 2020-21 school year beginning in July 2020. Defendant decided to take no action to offer L.M. a FAPE in response to Parents' TDN. Defendant's only response on July 6, 2020 to parents' TDN was to advise parents that the Defendant had no interest

in settling their case and that they had to sue Defendant.

On July 8, 2020 Parent filed DPC3 and the case was again assigned to IHO Flame. L.M. attended iHope for the 12-month 2020-21 school year via Remote Learning program develop by iHope in response to the COVID-pandemic. *See Ex. 6, Due Process Complaint for the 2021-22 school year (DPC3).*

After receipt of the winning FOFD in DPC 1 parent Roller Law requested the DOE to agree to pendency in DPC2 retroactive to the date of the filing of the DPC2 on July 8, 2020. Because the DOE refused to implement pendency without a Pendency Order, IHO Flame held a pendency hearing on March 10, 2021 *(see Ex. 10, Pendency Hearing Transcript dated March 10, 2021)* and issued a Pendency Order requiring Defendant to pay the fund L.M.'s attendance at iHope retroactive to the filing of DPC 2 July 8, 2020. *See Ex. 11, Interim Order on Pendency dated March 17, 2021.*

On March 21, 2021 IHO Flame was recused from DPC2. *See Ex. 12, Notice re: Change in IHO dated March 21, 2021.* No IHO was appointed to the DPCs from March 21, 2021 to May 20, 2021 when IHO Gronbach was appointed to hear the case. The parties appeared before IHO Gronbach on May 28, 2021 to advise whether the case was being considered for settlement by Defendant. Plaintiff's counsel advised the IHO that the case was not referred for settlement, and Defendant's litigator indicated that the case was being investigated for settlement. *See Ex. 13, May 28, 2021 Transcript.*

The parties appeared before IHO Gronbach again for pre-trial hearing on June 28, 2021, whereby Plaintiff's counsel reported that she had reached out the Defendant's investigating attorney but had not heard back yet. *See Ex. 14, June 28, 2021 Transcript at 22-23.*

The IHO stated that the parties must proceed to hearing and Defendant indicated that they would present two witness to defend their provision of a FAPE to L.M.

While DPC2 was pending the planning and work for the 2021-22 school year (DPC3) was well underway. Parent had retained Roller Law again for the 2021-22 school year on or about March 26, 2021. On June 17, 2021, L.M.'s Parents served a TDN expressing their disagreement with the program and school offered by Defendant and notifying the Defendant that if corrective measures were not taken, they would reenroll L.M. at iHope for the 2021-22 school year beginning in July 2021. Defendant decided to take no action to offer L.M. a FAPE in response to Parents' TDN.

The parties appeared before IHO Gronbach again for pre-trial hearing on July 6, 2021 whereby Defendant indicated that they would defend their provision of a FAPE to L.M. in DPC2. *See Ex. 15, July 6, 2021 Transcript.*

On July 6, 2021 Parent filed DPC3 alleging failure of Defendant to offer a FAPE to L.M. for the 2021-22 school year and IHO Gronbach was appointed to hear that case. *See Ex. 6, Due Process Complaint for the 2021-22 school year (DPC3).*

The parties appeared before IHO Gronbach again for pre-trial hearing on July 23, 2021 whereby counsel agreed to consolidated DPC 2 and DPC 3 in the interest of judicial economy. On July 23, 2021 DPC 2 and DPC 3 were consolidated for trial by IHO Gronbach, under Case number 196308. *See Ex. 16, July 23, 2021 Transcript and Ex. 17, Order of Consolidation dated July 23, 2021.*

Roller Law prepared for and proceeded to trial.  The DOE chose not to put on a Prong I case. Plaintiffs prepared for trial adjusting their evidence and testimony from DPC 2 (2020-21) to incorporate evidence and testimony for DPC 3 (2021-22), to show that iHope remained an appropriate placement. Plaintiff Parent presented two witnesses by Affidavit to prove his case for both school years.

IHO Gronbach issued her Findings of Fact and Decision on October 19, 2021. She held entirely in Parent's favor. *See Ex. 18, FOFD2 dated October 19, 2021..*

The DOE did not appeal FOFD1 or FOFD2. Plaintiffs are therefore "prevailing parties" under the IDEA and entitled to reasonable attorneys' fees, as discussed below.

**STANDARD OF REVIEW**

Prevailing parties under the IDEA are awarded reasonable attorney's fees. "In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). "Fees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C).

"[A] plaintiff who received IHO-ordered relief on the merits in an IDEA administrative proceeding is a 'prevailing party.'" *A.R. v. N.Y.C. Dep't of Educ.*, 407 F.3d 65, 75 (2d Cir. 2005). The presumptively reasonable fee, also known as the lodestar, is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

Courts in this district have issued numerous IDEA fee decisions; however, their agreed analytical framework is "a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel." *Y.G. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 641 (AKH), 2022 U.S. Dist. LEXIS 65120, *3, 2022 WL 1046465 (S.D.N.Y. Apr. 7, 2022) (quoting *Farbotko v. Clinton Cnty.*, 433 F.3d 204, 209 (2d Cir. 2005)). The prevailing market rate is "the rate a paying client would be willing to pay." *Y.G.*, 2022 U.S. Dist. LEXIS 65120, at *4 (quoting *Arbor Hill Concerned Citizens v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)).

A lawyer's overall legal experience, as well as his or her specialized experience, determines the hourly rate. *A.R.*, 407 F.3d at 82 ("Even though much of the lawyers' careers was spent practicing in areas other than education law, their overall legal experience merited a higher hourly rate because

'most important legal skills are transferrable.'") (Quoting *I.B. v. N.Y.C. Dep't of Educ.*, 336 F.3d 79, 81 (2d Cir. 2003). Courts consider the factors listed in *Johnson v. Georgia Highway Express*:   These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d 714, 717-19 (5th Cir. 1974) abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989)).   Courts in this circuit also apply factors listed in *Arbor Hill*, which include: the case's complexity and difficulty, expertise and capacity of opposing counsel, resources needed to litigate, the demands of the case, an attorney's independent interest in the litigation, whether the attorney initially acted *pro bono*, and other returns (*i.e.*, reputation, etc.) the attorney might expect from the case. *Arbor Hill*, 522 F.3d at 190. Courts need not recite and make separate findings for every *Johnson* and *Arbor Hill* factor. *Lochren v. Cnty. of Suffolk*, 344 F. App'x 706, 709 (2d Cir. 2009).

## **ARGUMENT**

### 1.  **Plaintiffs are Prevailing Parties.**

Plaintiffs are the prevailing parties. They obtained three completely favorable orders from the IHOs on their Due Process complaints, affording them relief that they would not have obtained absent those orders.

### 2.  **Roller Law's Requested Hourly Rates for its Attorneys and Paralegals are Reasonable.**

Judge Hellerstein recently awarded attorneys' fees for work done by Roller Law at the rates

11

requested, $325-550.00 for attorneys and $125-200.00 for paralegals. *J.H.*, 2024 U.S. Dist. LEXIS 91161, at *4. This Court has considerable discretion in determining the hourly rates in this case, and Judge Hellerstein's decision is persuasive.

In determining the fee award, this Court should consider Defendant's long history of choosing not to meet its statutory obligations to children with disabilities, like L.M. *See, e.g., Jose P. v. Ambach,* 669 F.2d 865 (2d Cir. 1982); *M.F. v. N.Y.C. Dep't of Educ.*, 582 F. Supp. 3d 49 (S.D.N.Y. 2022).

As Congress recognized when it enacted the IDEA, providing FAPE for children with disabilities is essential to "ensure equality of opportunity, full participation, independent living, and economic self-sufficiency for individuals with disabilities." 20 U.S.C. § 1400(c)(1). Thus, hourly rates awarded must be sufficient to attract knowledgeable lawyers to represent these families. Judge Hellerstein noted that "[t]here are not many lawyers who take IDEA cases, perhaps because the fee structure has been so tight." *J.H.*, 2024 U. S. Dist. LEXIS 91161, at *4.

Defendant has no interest in attracting lawyers to represent families; it would rather insult parent-side lawyers than reduce its liability for fees by providing FAPE. Tellingly, Defendant would rather hire outside counsel without any IDEA experience at $400.00 an hour to manage fee actions, than resolve cases that are indefensible. *See Ex. 29, Drohan Lee Contract dated December 22, 2022, Roller Decl. ¶ 64, 83.*

     a. **Experience of Roller Law Attorneys and Staff.**

Irina Roller is the founder and owner of Law Offices of Irina Roller, PLLC, a law firm in New York, New York. *See Ex. 19, Roller Curriculum Vitae, Roller Decl. at ¶¶ 54, 12.* She is a 1999 graduate of New York Law School, admitted to the bar of New York in 2000 as well as the United States District Courts for the Southern and Eastern Districts of New York. *Id. at ¶¶ 10, 12.* She has

litigated and tried cases in the Supreme Courts of New York State, represented clients before the New York State Court of Claims, prepared appeals and argued before the Appellate Division. *Id. at ¶* 11.

Roller Law was founded in 2004, and since 2007 has been dedicated to assisting parents in advocating for their children's needs in Committee on Special Education meetings and through Due Process hearings. The firm has represented parents throughout the geographic areas covered by the Southern and Eastern Districts of New York. *Id. at ¶12* .

Roller's current hourly rate is $600.00 per hour for cases that started during the 2022-23 and 2023-24 school years. *Id. at ¶ 13*. Her rate has incrementally increased to reflect the prevailing rates in NYC for attorneys with a similar level of experience. *Id. at ¶ 14*. Her rate accurately reflects rates within the Southern District of New York for attorneys of similar skill and experience practicing in this area of the law. *Id. at ¶ 15*. For this matter, Plaintiffs request $550.00 per hour for Roller's work. *Id. at ¶ 16*.

Courts in this district and in the Eastern District of New York have set rates at or above $550-600.00 hour for comparable work in other areas of federal civil rights law. *See, e.g., Alston v. City of New York*, 2023 U.S. Dist. LEXIS 201967, *22 (E.D.N.Y. November 9, 2023); *Agudath Isr. of Am. v. Hochul*, 2021 U.S. Dist. LEXIS 233088, *24, 2021 WL 5771841 (E.D.N.Y. Dec. 6, 2021).

Former Roller Law attorney Edward Perkins is a 2015 graduate of Vanderbilt University School of Law.  He was admitted to the New York bar in 2016. Mr. Perkins has 8 years of experience relevant to Special Education law.  Mr. Perkins currently serves as an Impartial Hearing Officer for the New York Office of Trials and Hearings (OATH) presiding over IDEA cases such as these cases. For this case Plaintiffs request $325.00 per hour for Mr. Perkins' work. *See Ex. 20, Perkins resume, Roller Decl. at ¶¶ 55, 74.*

Roller Law attorney Jill Hornig is a 1992 graduate, *cum laude*, from Pace University School of Law. She was admitted to the New York bar in 1993 and practices both in New Yor and

Connecticut. She has approximately 19 years of experience in Special Education litigation and related areas of practice. She practices in both New York and Connecticut. For this case Plaintiffs request $500 per hour for Ms. Hornig's work. *See Ex. 21, Hornig resume, Roller Decl. at ¶¶ 56, 75.*

Roller Law attorney Danielle L. McGee is a 2013 graduate, *cum laude*, from Quinnipiac University School of Law. She was admitted to the New York bar in 2015. She has approximately 11 years of experience relevant to Special Education law and related areas of practice. She practices in both New York and Connecticut. For this case we are requesting $450.00 per hour for Ms. McGee. *See Ex. 22, McGee resume, Roller Decl. at ¶¶ 57, 76.*

Former Roller Law paralegal Diane Ho graduated from St. John's University in 2018 with a bachelor's degree in legal studies. Prior to completing her degrees, Ms. Ho had a long work history in law firms as a legal assistant and office assistant, which gave her skills directly transferrable to her paralegal work with Roller Law. For this case we are requesting $185.00 per hour for Ms. Ho. *See Ex. 26, Ho resume, Roller Decl. at ¶¶ 61, 77.*

Former Roller Law paralegal Anna Patricia Castro graduated with a Bachelor's degree in arts in 1995. She is fluent in Portuguese and Spanish. Prior to joining Roller Law, she was an ESL teacher, foreign language professor and executive assistant. For this case we are requesting $125.00 per hour for Ms. Castro. *See Ex. 25, Castro resume, Roller Decl. at ¶¶ 60, 78.*

Former Roller Law paralegal Nancy L. Powell graduated from Temple University in 2011 with a bachelor's degree in arts of Political Science and a graduate of Rutgers University Law School in 2019. For this case we are requesting $200.00 per hour for Ms. Powell. *See Ex. 23, Powell resume, Roller Decl. at ¶¶ 58, 79.*

Former Roller Law Firm Manager Maria Mandilas is a graduate of Brooklyn College and New York Paralegal School. She has more than a dozen years' experience as a litigation paralegal and office manager. She also served as the Director, School Office of Special Services at Magen David

Yeshiva Elementary School in Brooklyn, New York.  For this case Plaintiffs request $200.00 per hour for Mandilas's work. *See Ex. 24, Mandilas resume, Roller Decl. at ¶¶ 59, 80.*

Former Roller Law paralegal Dionna Goldstein graduated from John Jay College of Criminal Justice in 2017*, cum laude*, with a Bachelor's degree in Science of Criminal Justice.  She also received a Paralegal Certification from City College of New York in 2018. For this case we are requesting $150.00 per hour for Ms. Goldstein. *See Ex. 27, Goldstein resume. Roller Decl. at ¶¶ 62, 81.*

Roller Law Senior Paralegal Gaitree Bhoge earned a Bachelor of Business Administration degree from CUNY Bernard Baruch College, in New York City, in 2002. She has over 21 years of experience in litigation support.  She assists Roller and other attorneys in every aspect of the firm's litigation. For this case Plaintiffs request $200.00 per hour for Bhoge's work. *See Ex. 28, Bhoge resume, Roller Decl. at ¶¶ 63, 82.*

The following table summarizes the education, experience and rates requested for Roller Law attorneys and staff, described above.[6]

| Attorney/Law Clerk | Law School Graduation | Bar Admission | Special Educ. related legal experience | Rate Requested |
|---|---|---|---|---|
| Hornig, Jill | 1992 | 1993 | 19 | $500.00 |
| McGee, Danielle | 2013 | 2013 | 11 | $450.00 |
| Perkins, Edward | 2015 | 2016 | 8 | $325.00 |
| Roller, Irina | 1999 | 2000 | 25 | $550.00 |

| Paralegal/Law Clerk | Degree | Legal and Related Experience | Rate Requested |
|---|---|---|---|
| Bhoge, Gaitree | 2002 | 24 | $200.00 |
| Castro, Anna Patricia | 1995 | 3 | $125.00 |
| Goldstein, Dionna | 2017 | 5 | $150.00 |
| Ho, Diane | 2018 | 5 | $185.00 |
| Mandilas, Maria | 2003 | 19 | $200.00 |
| Powell, Nancy L. | 2011 | 4 | $200.00 |
|  |  |  |  |

---

[6] Roller Decl. at ¶ 86.

### b. Client Declarations Demonstrating the Prevailing Market Rates for Special Education Attorneys in the New York Metropolitan Area.

Roller Law's rates are consistent with prevailing market rates which are the rates a paying client would be willing to pay. *See, e.g., Y.G.*, 2022 U.S. Dist. LEXIS 65120, at *4. Two Roller Law clients, both New York City attorneys, attest that they willingly paid the firm's requested hourly rates. They explain that Roller Law's rates are extremely reasonable, especially given the rates lawyers in the New York metropolitan area charge for work no more complex and no less important than Special Education litigation.

Alexander Gendzier, an attorney licensed to practice in New York since 1999, hired Roller Law to handle cases for his two children, both of whom have disabilities. *See* Decl. of Alexander Gendzier, dated August 5, 2024 at ¶¶1- 2, 7. As a partner at Arnold & Porter LLP, a global law firm, and he interacts with dozens of attorneys in New York and Boston each year. *Id.* at ¶3.

After working closely with Ms. Roller and other special education law firms, Gendzier learned that special education law requires "specialized knowledge that takes many years of training and experience to master." *Id.* at ¶ 8. He notes that Roller Law's work is "equal parts counseling, litigating and strategy," unlike the practices of large firm attorneys. *Id.* at ¶ 9. He praises Ms. Roller's ability to explain complex strategies,  manage client emotions during stressful situations, and communicate effectively. *Id.* at ¶¶ 8-10. He compares Roller Law favorably with other firms in New York City in all aspects of legal practice.  *Id.* at ¶ 10.  The firm achieved outstanding results for his family for more than a decade. *Id.* at ¶ 14. He never hesitates to pay Roller Law's hour rates, which started at $450.00 per hour in 2011 and have increased incrementally each year to $600.00 per hour in 2022. *Id.* at ¶¶ 11, 13.  He notes that large firm partners with experience comparable to Ms. Roller's experience presently charge between $1,480.00 and $2,000.00 per hour. *Id.* at ¶ 12.

Mr. Gendzier demonstrate that Roller Law's requested hourly rates are consistent with the prevailing market rate for special education lawyers. Roller Law is *not* seeking court-awarded rates

comparable to large New York firms; however, the gap between those firms' rates and those Roller Law seeks is quite significant.  Even if courts will not award special education lawyers' rates comparable to lawyers for corporations, the rates awarded should not be frozen time, and should increase to reflect inflation and increases in cost of living.

While Roller Law has clients willing and able to pay its full hourly market rates, the firm also takes cases on a full or partial contingent basis, as IDEA's fee-shifting provisions were designed to encourage.

Roller Law client Yesenia Ortiz-Umar is the parent of Z.U., a child diagnosed with Autism Spectrum Disorder. *See* Decl. of Yesenia Ortiz-Umar, dated August 6, 2024 (filed with Plaintiffs' opening papers) at ¶¶ 1-2.  Z.U. has persistent deficits in social communication and rarely uses language.  *Id*. at ¶ 3.  He has little safety awareness, does not respond to his name, and engages in Pica of Infancy in Childhood, which causes him to mouth and eat non-food items. *Id*.

For the 2018-19 school year, Z.U. needed a 12-month school placement that the DOE could not provide, and Ms. Ortiz-Umar reached out to Roller Law to assist her in enrolling him at an appropriate private school. *Id*. at ¶¶ 4-6.  She could not afford a lawyer, but Ms. Roller agreed to represent her for a small flat fee. *Id*. at ¶¶ 6-7. Following Roller Law's strategy, Ms. Ortiz-Umar was able to secure a settlement that placed Z.U., at DOE expense, at Manhattan Star Academy (M.S.A.), a school that specializes in teaching children like him. *Id*. at ¶¶ 8-12. The settlement included only a fraction of the fees that Roller Law incurred, but the firm advised Ortiz-Umar to accept the agreement and did not ask her to make up the shortfall in fees. *Id*. at ¶ 13. The firm continued working to enforce the agreement even without payment. *Id*. at ¶ 14.

For the 2019-20 school year, the DOE again failed to offer FAPE to Z.U., but still forced Ms. Ortiz-Umar to go to a hearing. *Id*. at ¶¶ 15-18. Roller Law prevailed at a Due Process Hearing that

the DOE unwisely litigated. *Id*. at ¶¶ 19-23. Ultimately, Z.U. has made significant progress, acquiring basic living skills that have greatly improved his and his family's lives. *Id*. at ¶ 24.

Parent's and Ms. Ortiz-Umar's experiences demonstrate why courts should enforce IDEA's fee-shifting provision in a manner that encourages private law firms represent plaintiffs of all means and backgrounds. Firms should be incentivized to accept such cases – even if it sometimes means risking financial loss – to vindicate these clients' and their children's interests and advance the basic anti-discrimination goal of the IDEA.

### c. Declarations from Special Education Attorneys with Personal Knowledge of Prevailing Market Rates in the New York Metropolitan Area.

Attorney Gary S. Mayerson has attested to the reasonableness of the rates requested for Roller law attorneys and staff. *See* Decl. of Gary S. Mayerson, Esq., dated August 6, 2024 (filed with Plaintiffs' opening papers). Mayerson is a senior member of the nationwide special education bar, responsible for numerous high-profile cases in New York and throughout the United States. *Id*. at ¶¶ 1-3, 6-8. He has published several books on autism and special education. *Id*. at ¶ 5. He has testified before Congress, served on the boards of non-profits for special needs children, lectured at universities and law schools, and given CLEs on special education law. *Id*. at ¶¶ 9-11.

Mayerson stated that, based on his familiarity with their reputations in the field of special education law, Roller's requested rate of $550.00 is "well within the accepted market rate in the New York metropolitan area" for attorneys of their experience and expertise. *Id*. at ¶¶ 13-16. Mayerson has for years billed clients $675.00 per hour for direct services and $800.00 per hour for supervisory work. *Id*. at ¶ 12.

Attorney Adrienne Arkontaky has also attested to the reasonableness of the rates requested here. She has nineteen years of special education litigation experience. *See* Decl. of Adrienne J. Arkontaky, dated August 8, 2024 (filed with Plaintiffs' opening papers) at ¶ 17. After managing a regional special education law firm from 2012 through November 2023, she opened Arkontaky Law

Group in Westchester County. *Id*. at ¶ 5. Over the last nineteen years, she has gained "extensive knowledge of the ordinary and proper billing practices for attorneys in this highly specialized field, as well as the prevailing market rates for attorneys in the New York Metropolitan Area." *Id*. at ¶ 17.

Ms. Arkontaky charges $600.00 per hour for her time.  *Id*. at ¶ 18.  She bills her associates $450.00 per hour. *Id*. at ¶ 19.  Paralegals are billed at $225.00 per hour. *Id*. at ¶ 20.  She is personally familiar with the work of Irina Roller and attests that her hourly rate of $550.00 per hour is reasonable and consistent with those of attorneys in her firm, special education law, and general litigation.  *Id*. at ¶¶ 23-24.

Attorney Jesse Cole Cutler has also attested to the reasonableness of the rates requested by Ms. Roller and Roller law attorneys and staff.  Cutler has been a special education attorney since 2003, when he was first admitted to the New York bar. Decl. of Jesse Cole Cutler, dated August 8, 2024 (filed with Plaintiffs' opening papers) at ¶¶ 1, 2, 4.  He is a partner and supervising attorney for the Law Offices of Regina Skyer and Associates, L.L.P., and in that position reviews the work product and billing of 21 attorneys at the firm. *Id*. at ¶ 6.

Having familiarity with and having reviewed the rates charged by the relatively small group of special education attorneys in New York City, he determined the range of hourly rates is between $400 and $700 per hour. *Id*. at ¶¶ 8, 13. Mr. Cutler's own hourly rate is $650.00, which accurately reflects rates in this district for attorneys of similar skill and experience. *Id*. at ¶ 7.

Mr. Cutler is personally familiar with Roller Law and Irina Roller's work as a special education attorney and attests to her high level of skill and experience and reputation for that skill and experience. He states that Ms. Roller's rate of $550.00 is appropriate.  *Id*. at ¶ 14.

In sum, Roller Law has demonstrated that it does have paying clients with great knowledge of hourly rates for lawyers in the New York metropolitan area confirm that, after doing due diligence, they hired Roller Law and willingly paid the firm's hourly rates. And other special education lawyers

in this region confirm that Roller Law's requested rates are reasonable and consistent with market rates.

### d. The *Johnson* and *Arbor Hill* Factors Reinforce the Reasonableness of Roller Law's Requested Hourly Rates for these Consolidated Actions.

The *Johnson* and *Arbor Hill* factors reinforce the reasonableness of Roller Law's requested hourly rates for these consolidated actions. Roller Law achieved complete success on the merits in three state Due Process actions. The Supreme Court has explained that "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). Here, in all three actions, Plaintiffs attained complete success on the merits, defined as "the quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve." *Barfield v. N.Y.C. Health & Hosps Corp.*, 537 F.3d 132, 152 (2d Cir. 2008).

The *Johnson* factors include both "the skill requisite to perform the legal service properly" and the "experience, reputation and ability" of the attorneys involved. *Johnson*, 488 F.2d at 717-19. With decades of experience, Ms. Roller and her colleagues have outstanding reputations with clients and among their peers. *See* Mayerson Decl. at ¶¶ 13, 15; Arkontaky Decl. at ¶¶ 29, 34-35; Cutler Decl ¶5, 6; Gendzier Decl. at ¶¶ 8-14; and Ortiz-Umar Decl. at ¶¶ 6-7, 9, 11, 22, 24.

Courts consider the risks that attorneys incur in the representation. Here, Roller Law accepted the three underlying due process matters on a partial contingency basis, charging Plaintiffs an upfront fee representing a small fraction of the cost of litigating them and assuming a substantial risk of non-payment or underpayment (and certainly delayed payment). *The firm* is litigating this fee action on a fully contingent basis. As one district court explained:

> [I]t is important to recognize that attorneys who practice in the field of special education have multiple responsibilities… Counsel in such cases are often litigating past entitlements, while giving contemporaneous advice as to a child's educational options, and at the same time helping them plan for future needs. In undertaking such representation on a contingent fee basis, counsel absorbs great risk. That includes not

only the risk of an unsuccessful outcome with no compensation for counsel after substantial time invested, but also the financial risks that come from absorbing the overhead of a law practice as well as the costs advanced in pursuit of a case.

*Rayna P. v. Campus Cmty. Sch.*, 390 F. Supp. 3d 556, 569-570 (D. Del. 2019).

Another court in this district recently reiterated that fees in IDEA cases should incentivize qualified practitioners to take civil rights cases on a contingent basis:

> Congress has left it to aggrieved parties and their lawyers to vindicate these rights [under the IDEA]. They are important rights and necessitate an award of fees where parents prevail. In evaluating the reasonableness of the fee, the court, among all other factors, should be sensitive to an adequate incentivization of counsel to take these cases. There are not many lawyers who take IDEA cases, perhaps because the fee structure has been so tight.

*Y.G.*, 2022 U.S. Dist. LEXIS 65120, at *2-3 (citing, *inter alia*, *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005); *Milwe v. Cavuoto*, 653 F.2d 80, 84 (2d Cir. 1981)).

Courts throughout the country recognize the complexity of special education law and award rates consistent with and indeed higher than those requested here. For example, one district court, citing decisions awarding rates between $575-650.00 per hour, noted "IDEA practice is highly specialized—an attorney who does IDEA work must understand the intricacies and the realities of the practice in order to obtain effective relief for his or her client in terms of an appropriate, individualized, educational placement." *Lawrence v. Palos Verdes Peninsula Unified Sch. Dist*, No. 8:23-cv-00524-JWH-ADSx, 2023 U.S. Dist. LEXIS 199129, at *10-12 (C.D. Cal. Nov. 1, 2023) (collecting cases).

Roller Law staff enjoy exceptional reputations for litigating tenaciously and delivering excellent results, as evidenced by the declarations from Roller Law clients as well as experienced special education attorneys. Defendant knows Roller Law/Ms. Roller has won hundreds of cases against it during her many years of practice. The experience, reputation, and ability of the lawyers (*Johnson* factor 9) and awards in similar cases (*Johnson* factor 12) support the requested fees.

21

In sum, Roller Law's requested rates are reasonable and in line with market rates in this District.

**3. Roller Law's Billable Hours were Reasonable and Justified.**

    **a. Roller and the Roller Law Attorneys and Staff have Litigated these Matters Efficiently and Effectively.**

Roller Law litigated these matters efficiently and its billable hours are reasonable and justified. As of August 7, 2024, Roller Law attorneys and staff billed a combined 199.9 hours on the three due process actions and this action: DPC 1: 97.8 hours; DPC2 and DPC3 Consolidated: 69.1 hours;; federal action: 33 hours (through August 7, 2024). *See* Exs 1, 2 and 3.

Roller Law's work here has spanned more than five years, beginning with initial client contact in the spring of 2019 and continuing through the present. *See* Ex. 1 at 1. The two hearings – 4 school years – required significant pretrial work. This work included client meetings, records review, research, witness preparation, preparing for and attending hearings, and updating Parent on the status of all three hearings. *See* Exs 1, 2 and 3.

Attorney Mayerson reviewed Roller Law's timesheets and confirmed their reasonableness. Mayerson Decl. at ¶ 17. He explains that Roller Law litigated the underlying actions with great efficiency. *Id*. at ¶ 22. He also notes that Roller used her experience to save trial time and that the firm's time entries are consistent with own firm's bills in comparable cases. *Id*. at ¶ 23.  DOE made little effort to limit its exposure for Parent's attorney's fees.

    **b. Roller Law's Total Billable Hours are well within the Range of Special Education Matters.**

The hours Roller Law billed in the two underlying matters for four consecutive school years, are consistent (if not lower) than the range of hours generally billed to special education matters. Special education cases often involve well over one hundred, if not hundreds, of billable hours. *See, e.g., C.D. v. Minisink Valley Cent. Sch. Dist*., 2018 U.S. Dist. LEXIS 134646, (S.D.N.Y. Aug. 9,

2018) at *13 (attorneys bill 383.1 hours); *M.C. v. N.Y.C. Dep't of Educ.*, 2013 U.S. Dist. LEXIS 78605, (S.D.N.Y. June 4, 2013) (attorneys bill for 325.12 hours). In sum, Roller Law's billable hours are reasonable. *See also* Mayerson Decl. at ¶¶ 24, 32 (noting that Roller Law's invoices are reasonable, appropriate, and consistent with his own firm's invoices).

Ms. Roller also used billing judgment to make several otherwise billable activities non-billable. In DPC1, Roller Law did not charge for 0.7 hours of legal activities, and case expenses totaling $176.00. *See Ex. 1, Invoice for Legal Fees and Costs for Case no. 185133*.

In DPC2, Roller Law did not charge for 1.8 hours of legal activities, and case expenses totaling $335.00. *See Ex. 2, Invoice for Legal Fees and Costs for Case no. 196308*.

### Total Fees Requested

Plaintiffs' total attorneys' fees, costs and expenses are broken down as follows:[7]

### First Due Process Action (DPC1 – No. 185133)

| Attorney/Paralegal | Hours | Rate | Total |
|---|---|---|---|
| Dionna Goldstein | 2.3 | $150.00 | $345.00 |
| Dianne Ho | 4.1 | $185.00 | $758.50 |
| Jill Hornig | 13.9 | $500.00 | $6,950.00 |
| Maria Mandilas | 7.1 | $200.00 | $1,420.00 |
| Edward C. Perkins | 23.3 | $325.00 | $7,572.50 |
| Nancy L. Powell | 6.9 | $200.00 | $1,380.00 |
| Irina Roller | 40.2 | $550.00 | $22,110.00 |
| Total hours | 97.8 | | $40,536.00 |
| Expenses | | | $89.50 |
| **Total hours & Costs** | **97.8** | | **$40,625.50** |

---

[7] Roller Decl. at ¶ 86.

**Second Due Process Action (DPC2 – No. 196308)**

| Attorney/Paralegal | Hours | Rate | Total |
|---|---|---|---|
| Gaitree Bhoge | 2.6 | $200.00 | $520.00 |
| Anna Patricia Castro | 7.5 | $125.00 | $937.50 |
| Dianne Ho | 0.9 | $185.00 | $166.50 |
| Jill Hornig | 15 | $500.00 | $7,500.00 |
| Maria Mandilas | 6.8 | $200.00 | $1,360.00 |
| Nancy L. Powell | 0.6 | $200.00 | $120.00 |
| Irina Roller | 23 | $550.00 | $12,650.00 |
| **TOTAL** | **69.1** | | **$28,969.00** |

**Federal Action through August 7, 2024**

| Attorney/Paralegal | Hours | Rate | Total |
|---|---|---|---|
| Bhoge, Gaitree | 9.7 | $200.00 | 1,940.00 |
| Roller, Irina | 23.3 | $550.00 | $12,815.00 |
| Total hours | 33 | | $14,755.00 |
| Expenses | | | $402.00 |
| **Total hours & Costs** | **33** | | **$15,157.00** |

**The total of all three actions through August 7, 2024, is $84,751.50:**

| | Hours | Fee |
|---|---|---|
| DPC1 | 97.1 | $40,625.50 |
| DPC2 | 69.1 | $28,969.00 |
| Federal Action (through August 7, 2024) | 33 | $15,157.00 |
| **TOTAL** | **199.9** | **$84,751.50** |

## CONCLUSION

WHEREFORE, for the reasons stated in this memorandum, Plaintiffs respectfully request that this Court award them **$84,751.50** in attorneys' fees and costs.

Dated: August 8, 2024
    New York, New York

        By: _____/s/_____
        Irina Roller (IR 0177)
        **LAW OFFICES OF IRINA ROLLER, PLLC**
        Attorneys for Plaintiffs
        40 Wall Street – 28th Floor
        New York, N.Y. 10005
        (212) 688-1100